1  J. SCOTT GERIEN (SBN 184728)
   sgerien@dpf-law.com
2  JOY L. DURAND (SBN 245413)
   jdurand@dpf-law.com
3  ALLISON N. BERK (SBN 347982)
   aberk@dpf-law.com
4  DICKENSON, PEATMAN & FOGARTY
5  1500 First Street, Suite 200
   Napa, California 94559
6  Telephone: (707) 261-7000
   Facsimile: (707) 340- 7239
7

8  *Attorneys for Plaintiff,*
   *Jackson Family Farms, LLC*
9

10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13

14  JACKSON FAMILY FARMS, LLC,              **Case No. 3:24-cv-06763-TLT**

15          Plaintiff,

16  vs.                                      **PLAINTIFF JACKSON FAMILY
                                             FARMS, LLC'S OPPOSITION TO
17  JERRY MOORE,                             DEFENDANT JERRY MOORE'S
                                             MOTION TO DISMISS**
18          Defendant.
                                             Date: February 4, 2025
19                                           Time: 2:00 PM
                                             Courtroom: 9, 19th Floor
20

21                                           Judge: Hon. Trina L. Thompson

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

ISSUES TO BE DECIDED....................................................................................................1

STATEMENT OF FACTS......................................................................................................1

ARGUMENT .........................................................................................................................3

    A.    Standard for Determining a Rule 12(b)(1) Attack on Jurisdiction in a Declaratory
          Judgment Action. ..............................................................................................4

    B.    This Court has Clear Jurisdiction to Hear Plaintiff's Declaratory Judgment Action
          and the Contingent Claims for Cancellation of Defendant's Trademark
          Registrations as There Is a Case of Actual Controversy Concerning
          Infringement. .....................................................................................................5

          1.    A Case of Actual Controversy Exists Between the Parties
                Concerning Trademark Infringement and the Validity of Defendant's
                Alleged Trademark Rights. ................................................................6

                a.    Plaintiff's Mark is in Use thereby Creating the Possibility of
                    Liability for Infringement.......................................................7

                b.    Plaintiff has a Reasonable Apprehension That It Will be Subject to
                    Suit by Defendant.............................................................10

                c.    Actual Controversy Exists Given Plaintiff's Present Use of the
                    Mark and Plaintiff' Reasonable Apprehension Resulting from
                    Defendant's Acts. .............................................................15

           2.    The Court Should Exercise Jurisdiction Over Plaintiff's Declaratory
                Judgment Claim...............................................................................15

    C.    In The Event the Court Grants Defendant's Motion, Plaintiff Should be Allowed
          Leave to Amend the Complaint. .......................................................................18

**Cases**

*Airs Aromatics LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595 (9th Cir. 2014) ...................................................................................................5

*Allflex USA, Inc. v. Avid Identification Sys., Inc.,* 2008 WL 9475310 (C.D. Cal. Feb. 29, 2008) ...............................................................................................................16

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) .............................................................13

*Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) ...............................................................................................................15, 16, 17

*Cabell v. Zorro Prods. Inc.*, 2017 WL 2335597 (N.D. Cal. May 30, 2017) .....................4

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) ...................5

*Chesebrough–Pond's v. Faberge*, 666 F.2d 393 (9th Cir. 1982) ..............................10, 16

*Clapper v. Amnesty International*, 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ...........................................................................................................................10

*Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir. 1994) .....................................16

*Comcast Cable Commc'ns Corp. v. Finisar Corp.*, 2006 WL 3259000 (N.D. Cal. Nov. 9, 2006) ..............................................................................................................13

*D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*, 2021 WL 4464201 (C.D. Cal. Aug. 3, 2021) .......................................................................................................6, 9

*E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632 (9th Cir. 2014) ....................10, 14

*FN Cellars, LLC v. Union Wine Co.*, 2015 WL 5138173 (N.D. Cal. Sept. 1, 2015) .......6, 14, 16, 17

*G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985 (7th Cir. 1989) ..........................9

*Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir.1998)..........................15, 16, 17

*Hyundai Motor Am., Inc. v. Yahala Trading Co.,* 2020 WL 3963875 (C.D. Cal. May 1, 2020)........................................................................................................................6, 9

*Inkit, Inc. v. Nintex UK Ltd*., 2024 WL 3915162 (C.D. Cal. July 19, 2024)...................13

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)....................................5

*Larami Corp. v. Amron*, 1994 WL 369251 (S.D.N.Y. July 13, 1994)...........................14

Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522 (9th Cir. 2008)..........................18

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .............................................................18

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) ...............................................5

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ...........................................................................................................................10



*Minnesota Mining & Manufacturing Co. v. Norton Co.*, 929 F.2d 671 (Fed.Cir.1991) ...............................................................................................................14

*Mockingbird Found., Inc. v. Quang-Tuan Luong*, 2020 WL 858099 (N.D. Cal. Feb. 20, 2020).............................................................................................................4

*Neilmed Prod., Inc. v. Med-Sys., Inc.*, 472 F. Supp. 2d 1178 (N.D. Cal. 2007) ..................... passim

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2004) ...................................5

*Quality Candy Shoppes/Buddy Squirrel of Wisconsin, Inc. v. Grande Foods*, 90 U.S.P.Q.2d 1389, 2007 WL 2602994 (TTAB 2007) ....................................................7

*Rakuten Med., Inc. v. Illumina, Inc.*, 2021 WL 1530999 (N.D. Cal. Apr. 19, 2021).......................17

*Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151 (9th Cir. 2007) .........................................14

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ......................................4

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012 (9th Cir.), *cert. denied*, 144 S. Ct. 190, 217 L. Ed. 2d 77 (2023)...............................10

*Shloss v. Sweeney*, 515 F. Supp. 2d 1068 (N.D. Cal. 2007) ..........................................14

*Sobini Films v. Tri-Star Pictures Inc.*, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001).....................6

*Societe de Conditionnement En Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938 (9th Cir. 1981) ...........................................................................................4, 10

*Starter Corp. v. Converse, Inc.*, 84 F.3d 592 (2d Cir. 1996) ........................................6

*Warth v. Seldin*, 422 U.S. 490 (1975) ..............................................................4

## Statutes

28 U.S.C. § 2201 ..................................................................................5, 6

California Business and Professions Code § 17200...................................................16

## Other Authorities

McCarthy on Trademarks and Unfair Competition § 18:52 (5th ed.)......................................7

## Rules

Rule 12(b)(1) of the Federal Rules of Procedure ..................................................3, 4, 5

Rule 12(b)(6) of the Federal Rules of Civil Procedure .............................................3, 4

Rule 15(a) of the Federal Rules of Civil Procedure. ................................................18

Rule 408(a) of the Federal Rules of Evidence .......................................................12

**INTRODUCTION**

Plaintiff, Jackson Family Farms, Inc. ("Plaintiff"), hereby opposes the Motion to Dismiss filed by Defendant, Jerry Moore ("Defendant").   In support of this Opposition, Plaintiff has concurrently filed three declarations: 1) Declaration of Katy Stambaugh in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Stambaugh Decl."); 2) Declaration of Tyler Elwell in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Elwell Decl."); and, 3) Declaration of J. Scott Gerien in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Gerien Decl.").

Plaintiff brought this declaratory judgment action following numerous threats of trademark infringement and litigation from Defendant against use of the trademark JETT on wine by Plaintiff's licensee, Jackson Family Wines, Inc. ("JFW").  The available evidence suggests that Defendant has not legitimately used his registered trademarks in commerce in a manner that would result in consumer confusion from the use of the JETT mark by JFW.  Nevertheless, Defendant has continued to make threats of infringement against Plaintiff and JFW's use of JETT, and has not offered Plaintiff an unconditional and irrevocable covenant not to sue.  Thus, Defendant has created a reasonable apprehension by Plaintiff in the continued use of the JETT trademark on wine. Accordingly, there is clear subject matter jurisdiction for the Court to hear Plaintiff's claims of non-infringement and attendant cancellation of Defendant's registrations.

**ISSUES TO BE DECIDED**

Whether Plaintiff's declaratory judgment claim for trademark non-infringement, and attendant claims for cancellation of trademark registrations, establish a case of actual controversy so as to create subject matter jurisdiction for this Court to hear the claims.

**STATEMENT OF FACTS**

Plaintiff is the owner of U.S. Trademark Application Serial No. 97/384,930 for the mark JETT for "Alcoholic beverages, except beer" in International Class 33 ("Plaintiff's JETT Application").  ECF No. 1 at ¶10. Plaintiff has a trademark license agreement in place with JFW, pursuant to which Plaintiff develops, controls, and licenses numerous marks for use by JFW for the production, sale and distribution of wine, including the mark JETT. Stambaugh Decl. ¶2. Pursuant

1    to the license, Plaintiff also indemnifies JFW for any claims related to such use. Stambaugh Decl.

2    ¶2.

3         Plaintiff filed its JETT Application on April 27, 2022, based on the intent that JFW would

4    use the mark in commerce on wine.  ECF No. 1 at ¶10. On February 9, 2023, the United States Patent

5    and Trademark Office ("USPTO") issued an office action refusing to register Plaintiff's JETT mark

6    because of a perceived likelihood of confusion with registered marks owned by Defendant for JETT

7    for vodka (U.S. Registration No. 4836946) and JET for distilled spirits (U.S. Registration No.

8    5109984 (the "Defendant Registrations").  ECF No. 1 at ¶10.

9         Plaintiff had investigated Defendant's use of the marks registered in the Defendant

10   Registrations and concluded that the marks did not appear to be in use in commerce. ECF No. 1 at

11   ¶¶12-14. Accordingly, following receipt of the USPTO refusal of Plaintiff's JETT Application based

12   on Defendant's Registrations, Plaintiff filed a Petition to Cancel the Defendant's Registrations with

13   the Trademark Trial and Appeal Board of the USPTO ("TTAB") on August 8, 2023.  ECF No. 1 at

14   ¶15.

15        At about the same time it filed the cancellation, JFW began using the JETT mark in

16   association with wine, offering an auction lot of JETT wine at the Auction of Washington Wines

17   charity event. Elwell Decl. ¶¶3-4, Exh. 1.  In late 2023, JFW also began developing the packaging

18   for the JETT wine featuring the JETT brand and mark. Elwell Decl. ¶¶6-9, Exhs. 2-6. In February of

19   2024, JFW sampled the JETT wine to members of the wine trade at an event for the Premiere Napa

20   Valley wine auction. Elwell Decl. ¶5. In Spring of 2024, JFW obtained the necessary government

21   approvals from state and federal alcohol beverage authorities for the commercial release of wine

22   featuring labels with the JETT brand name. Stambaugh Decl. ¶¶3-4, Exhs. 1-11.  In May of 2024,

23   the bottled wine was labeled with the labels and bottle capsules featuring the JETT brand name and

24   mark.  Elwell Decl. ¶10.

25        Then, on July 3, 2024, JFW received an email to its company headquarters in Santa Rosa,

26   California from Defendant objecting to the use of the JETT Mark on wine, claiming that the use

27   constituted trademark infringement of Defendant's marks. ECF No. 1 at ¶19, Exh. 3; Stambaugh

28   Decl. ¶5, Exh. 12. In his email, Defendant demanded that Plaintiff cease and desist from using the

JETT mark in association with wine and resolve the matter amicably to "avoid any further remedies as provided by state law and the United States Trademark Act." ECF No. 1 at ¶19, Exh. 3; Stambaugh Decl. ¶5, Exh. 12.

On July 9, 2024, Defendant then filed a motion with the TTAB to amend his answer in the JETT cancellation proceeding alleging that had he been aware of Plaintiff's "unauthorized use" of the JETT mark prior to July 2024, he would have filed for injunctive relief with a district court. ECF No. 1 at ¶20, Exh. 4.  Defendant then emailed Plaintiff's counsel offering to discuss settlement "before any injunction" was filed. ECF No. 1 at ¶21; Gerien Decl. ¶3, Exh. 2. Plaintiff offered for Defendant to make a settlement proposal, which he did, Plaintiff made a counter-settlement proposal to Defendant, and Defendant rescinded his settlement offer stating he would "pursue all available legal remedies to protect my trademarks." ECF No. 1 at ¶21; Gerien Decl. ¶¶3-8, Exhs. 2-7. At no point has Defendant withdrawn his threats against Plaintiff to seek legal remedies, including injunctive relief, for alleged trademark infringement, nor has Defendant warranted not to sue Plaintiff. ECF No. 1 at ¶21; Gerien Decl. ¶12.

Despite Defendant's threats, and given the investment in the JETT brand, Plaintiff and JFW have proceeded with use of the JETT mark for wine. Elwell Decl. ¶¶3-14. In May of 2024, the wine was labeled with the JETT brand name for general release and the labeled wine was served at the 2024 Auction of Washington Wines Gala on August 10, 2024. Elwell Decl. ¶¶10, 12, Exh. 8. Fearing it would be subject to an infringement lawsuit by Defendant for continuing to use its JETT mark on wine, Plaintiff commenced the instant action on September 26, 2024, seeking a judicial declaration that Plaintiff's conduct does not infringe Defendant's alleged trademark rights.  On September 30, 2024, the first distributor order for the JETT wine was received and the JETT wine was shipped in October of 2024. Elwell Decl. ¶13, Exh. 9.

## ARGUMENT

Based on Defendant's motion, it appears that Defendant is moving the Court to dismiss the action pursuant to Rule 12(b)(1)  for failure to establish standing and subject matter jurisdiction under Article III, and pursuant to Rule 12(b)(6) for failing to allege facts that support a cognizable legal theory to establish standing.  *See* ECF No. 9 at 16-17. However, the actual substance of

Defendant's attack for dismissal under both Rule 12(b)(1) and 12(b)(6) is that Plaintiff's declaratory judgment claim for trademark non-infringement fails to establish a real and substantial case or controversy. *See* ECF No. 9 at 8. Therefore, the inquiry into whether Plaintiff has established an "actual controversy" in satisfaction of the Declaratory Judgment Act and Rule 12(b)(6) merges with the issue of jurisdiction under Rule 12(b)(1), as both inquiries turn on whether Plaintiff has alleged an "actual controversy." *Cabell v. Zorro Prods. Inc.*, 2017 WL 2335597, at *9 (N.D. Cal. May 30, 2017)  (*citing, Societe de Conditionnement En Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981)); *see also, Mockingbird Found., Inc. v. Quang-Tuan Luong*, 2020 WL 858099, at *3 n.4 (N.D. Cal. Feb. 20, 2020) ("While the present motion to dismiss is styled as a motion under both Rule 12(b)(1) and Rule 12(b)(6), it only raises arguments about subject matter jurisdiction—not failure to state a claim.").  As there is clearly an actual controversy between the Parties, Defendant's motion must fail.

### A. Standard for Determining a Rule 12(b)(1) Attack on Jurisdiction in a Declaratory Judgment Action.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the complaint's allegations are sufficient on their face to invoke federal jurisdiction, and accepts all material allegations as true and construes them in favor of the party asserting jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039.

In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Id.*  In support of his claim of an absence of subject matter jurisdiction, Defendant asserts that Plaintiff's allegations of Defendant's trademark infringement threat and Plaintiff's use of the JETT trademark on wine are false (ECF No. 9 at 8), and Defendant has submitted evidence in support of its motion purportedly demonstrating such falsity.  *See* ECF No. 10 at Exhs. A-E.  Thus, Defendant's Rule 12(b)(1) attack is factual.

In resolving a factual dispute regarding subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for

summary judgment. *See id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. This Court has Clear Jurisdiction to Hear Plaintiff's Declaratory Judgment Action and the Contingent Claims for Cancellation of Defendant's Trademark Registrations as There Is a Case of Actual Controversy Concerning Infringement.

Plaintiff's Counts 1, 2 and 7 of the Complaint request declarations of Plaintiff's non-infringement of Defendant's trademark, no unfair competition, and invalidity of Defendant's trademark. *See* ECF No. 1 at ¶¶27-32, 45-47. The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. Courts use "a two-part test ... to determine whether a declaratory judgment is appropriate. First, the court must determine if there exists an actual case or controversy within the court's jurisdiction. Second, if so, the court must decide whether to exercise its jurisdiction." *Neilmed Prod., Inc. v. Med-Sys., Inc.*, 472 F. Supp. 2d 1178, 1179–80 (N.D. Cal. 2007); *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2004). Under both prongs of the test, declaratory judgment is appropriate here.

Defendant has additionally asserted that this Court has no jurisdiction over Counts 3-6 of the Complaint requesting cancellation of Defendant's trademark registrations (*See* ECF No. 1 at ¶¶33-44) as there is not an independent cause of action for such claims. Plaintiff acknowledges that cancellation of a federally registered trademark is not available as an independent cause of action, but instead "may only be sought if there is already an ongoing action that involves a registered mark." *Airs Aromatics LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014). Here, Plaintiff's declaratory judgment action for non-infringement of Defendant's registered marks constitutes such an ongoing action permitting Plaintiff to also request cancellation of Defendant's trademark registrations. See *id.* at 599; *FN Cellars, LLC v. Union Wine*

*Co.*, 2015 WL 5138173, at *2 (N.D. Cal. Sept. 1, 2015) ("[T]here is no independent basis for subject matter jurisdiction over plaintiff's ... claim, for cancellation of [defendant's] ... trademark ... The Court's jurisdiction over these claims is contingent upon a finding of subject matter jurisdiction over plaintiff's second claim for declaratory judgment of non-infringement for [plaintiff's] ... mark."). Therefore, if the Court retains Plaintiff's declaratory judgment claims, then it should also retain the claims for trademark registration cancellation as the cancellation claims are directly related to the claims of non-infringement.

      **1. A Case of Actual Controversy Exists Between the Parties Concerning Trademark Infringement and the Validity of Defendant's Alleged Trademark Rights.**

      The first step in determining whether adjudicating a Declaratory Judgment Act claim is appropriate is determining whether there is "a case of actual controversy." 28 U.S.C. § 2201; *Robinson*, 394 F.3d at 669. The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of the United States Constitution. *Id*. "Because declaratory judgment actions 'are particularly useful in resolving trademark disputes ... the finding of an actual controversy should be determined with some liberality.'" *D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*, 2021 WL 4464201, at *4 (C.D. Cal. Aug. 3, 2021) (*citing Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996)).

      "In suits requesting a judicial declaration of patent or trademark invalidity or non-infringement, courts apply a two-part test to determine whether an actual controversy exists ... [and] [t]he plaintiff must show both (1) an explicit threat or other action by the trademark holder, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) *present* activity which could constitute infringement or *concrete steps taken* with the intent to conduct such activity." *Hyundai Motor Am., Inc. v. Yahala Trading Co.*, 2020 WL 3963875, at *4 (C.D. Cal. May 1, 2020) (citing, *Sobini Films v. Tri-Star Pictures Inc.*, 2001 WL 1824039, at *2 (C.D. Cal. Nov. 21, 2001) (emphasis added)). Both elements are present in this case. Plaintiff will first address its present use of the JETT mark, and then Plaintiff's reasonable apprehension of a claim created by Defendant.

a.  **Plaintiff's Mark is in Use thereby Creating the Possibility of Liability for Infringement**

In its Complaint, Plaintiff alleged the use of the JETT mark for wine.  ECF No. 1 at ¶24. Defendant has disputed the truthfulness of this allegation and has submitted extrinsic evidence challenging Plaintiff's rights in the mark and use of the mark based on Plaintiff's corporate filings identifying the business as a trademark holding company.  *See* ECF Nos. 9 at 9:1-9 and 10-6. Defendant also suggests that because Plaintiff did not allege ownership of Certificates of Label Approval ("COLAs"), it had not used the JETT mark.[1] ECF No. 9 at 11:17-25.

While Plaintiff is a trademark holding company, Plaintiff has a trademark license agreement in place with Jackson Family Wines, Inc. ("JFW"). Stambaugh Decl. ¶2. Pursuant to such license, Plaintiff develops, controls, and licenses numerous marks for use by JFW in association with wine, including the JETT mark, and indemnifies JFW for any claims related to such use. Stambaugh Decl. ¶2. It is black letter law that a "licensee's use inures to the benefit of the licensor-owner of the mark." McCarthy, McCarthy on Trademarks and Unfair Competition § 18:52 (5th ed.); *see also Quality Candy Shoppes/Buddy Squirrel of Wisconsin, Inc. v. Grande Foods*, 90 U.S.P.Q.2d 1389, 2007 WL 2602994 (TTAB 2007) ("[Y]ears of precedent make it very clear that proper use of a mark by a trademark owner's licensee or related company constitutes 'use' of that mark attributable to the trademark owner.").  Thus, use of the mark by Plaintiff's licensee, JFW, creates trademark use rights belonging to Plaintiff.

The JETT trademark was in use in commerce by Plaintiff's licensee on wine prior to commencing the instant action, and Defendant has clearly acknowledged such use in his infringement threats. The wine intended for the JETT brand was first bottled by JFW in March of 2023. Elwell Decl. ¶3. On August 12, 2023, the Auction of Washington Wines charity featured an auction lot of JETT wine that was auctioned off to a consumer. Elwell Decl. ¶4, Exh. 1. The JETT wine auction lot was also prominently featured in the auction booklet distributed to attendees. Elwell Decl. ¶4, Exh. 1. On February 22, 2024, JFW poured the JETT wine in Napa Valley, California for

---

[1] Despite this, Defendant simultaneously asserts that he discovered COLAs for the JETT wine in July of 2024. ECF No. 9 at 13:10-14.

1  members of the wine trade at an event hosted by JFW in association with the Premiere Napa Valley

2  wine auction. Elwell Decl. ¶5.

3       Near the end of 2023, JFW initiated the process of producing the packaging for the wine

4  featuring the JETT brand name. Elwell Decl. ¶6, Exh. 2. In January and March of 2024, JFW worked

5  with producers in designing and producing the wine labels featuring the JETT mark, as well as the

6  capsules featuring the JETT mark which would be applied to the bottle closure.  Elwell Decl. ¶¶6-8,

7  Exhs. 2-5. In May of 2024, JFW worked with the producer of the twelve-bottle case shipper for the

8  wine that would prominently feature the JETT mark. Elwell Decl. ¶9, Exh. 6.  To date, JFW has

9  expended approximately $86,000 for the initial packaging and marketing materials for the JETT

10  wine.  Elwell Decl. ¶9.

11       In April of 2024, JFW obtained the required approvals from the U.S. Alcohol and Tobacco

12  Tax and Trade Bureau for the use of the first JETT wine labels on bottles for general distribution to

13  consumers. Stambaugh Decl. ¶3, Exhs. 1-4. Thereafter, on May 1, 2024, the JETT wine labels were

14  then produced.  Elwell Decl. ¶8. On May 28, 2024, the first of the bottled wines were labeled with

15  the labels featuring the JETT brand name and mark. Elwell Decl. ¶10. In June of 2024, JFW then

16  obtained the necessary government approvals from the State of Washington for shipment of wine

17  featuring the JETT wine labels.  Stambaugh Decl. ¶4, Exhs. 8-11.

18       On August 4, 2024, the magazine *Robb Report* published the first article about JFW's new

19  JETT brand of wine. Elwell Decl. ¶11, Exh. 7. On August 10, 2024, the JETT wine was again

20  featured as an auction lot at the Auction of Washington Wines event, and the newly labeled bottles

21  of the JETT wine were also poured for attendees at the accompanying Gala.  Elwell Decl. ¶12, Exh.

22  8.

23       The first order for general public distribution of the JETT wine was received from the wine

24  distributor Southern Glazer's Wine and Spirits on September 30, 2024, and the JETT wines were

25  then delivered in October of 2024.  Elwell Decl. ¶13, Exh. 9. JFW's website offering the wine for

26  sale went live to the public on October 9, 2024. Elwell Decl. ¶14, Exh. 10.

27       The public offering of the wine featuring Plaintiff's JETT mark at the Auction of Washington

28  Wines in August of 2023 and 2024, and at the Premiere Napa Valley Auction in February of 2024,

1   demonstrate that Plaintiff's mark is clearly in use. Defendant has acknowledged such use of

2   Plaintiff's mark in two separate instances as previously discussed: 1) In his first July 3, 2024, demand

3   letter ("Jackson Family Wines, Inc. **has been using** the mark 'JETT' in association with the

4   marketing and sale of your products and services, including wine. . .") (ECF No. 1, Exh. 3;

5   Stambaugh Decl. ¶5, Exh. 12 (emphasis added)), and, 2) In his July 9, 2024. motion to amend his

6   answer in the JETT Cancellation Proceeding ("[h]ad either [Defendant] or [Defendant]'s

7   Predecessor been aware of the **unauthorized use**, either would have filed for injunctive relief with

8   a district court. . .") (ECF No. 1, Exh. 4 at p. 3-4 (emphasis added)). Both of Defendant's

9   communications explicitly acknowledge use of Plaintiff's JETT mark.  Thus, there is a clear and

10  present controversy related to Plaintiff's JETT mark.

11        Furthermore, even if there was no technical "general public" use of the mark as of the date

12  of the filing, a Plaintiff need only show that concrete steps have been taken with the intent to use the

13  mark in order for there to be an actual controversy to warrant declaratory judgment.  *Hyundai Motor,*

14  2020 WL 3963875, at *4; *see also, D & D Greek Rest., Inc.*, 2021 WL 4464201, at *6 (finding

15  meaningful preparation to conduct activity that would infringe sufficient to create actual

16  controversy).   At a minimum, JFW's investment in, and creation and production of labels,

17  packaging, marketing and advertising materials, and the labelling of the wine, are all "concrete steps"

18  which demonstrate that there is a present, actual controversy.  *See G. Heileman Brewing Co. v.*

19  *Anheuser-Busch, Inc.*, 873 F.2d 985, 990–91 (7th Cir. 1989) (actual controversy supporting

20  declaratory judgment claim of non-infringement where brewery evinced a definite intent and

21  apparent ability to commence the use of the allegedly infringing mark on beer by expending many

22  thousands of dollars for product development and the creation of bottle label and can designs and

23  advertising).  The shipment of the labeled JETT wine to a distributor shortly after the filing of the

24  Complaint further establishes that all of the steps prior to the Complaint, were indeed concrete steps

25  taken toward the current general public use.

26  ///

27  ///

28  ///

    **b. Plaintiff has a Reasonable Apprehension That It Will be Subject to Suit by Defendant.**

The Ninth Circuit holds that "trademark disputes have sufficiently ripened into an actual controversy under the [Declaratory Judgment Act] when 'the plaintiff has a real and reasonable apprehension that he will be subject [to suit].'" *Neilmed*, 472 F. Supp. 2d at 1180 (quoting *Chesebrough–Pond's v. Faberge*, 666 F.2d 393, 396 (9th Cir. 1982)); *E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632, 634 (9th Cir. 2014).[2]

"In determining 'if the threat perceived by the plaintiff is real and reasonable,' the court focuses 'upon the position and perceptions of the plaintiff' and '[t]he acts of the defendant [are] ... examined in view of their likely impact on competition and the risks imposed upon the plaintiff.'" *Neilmed*, 472 F. Supp. 2d at 1180 (quoting *Chesebrough–Pond's*, 666 F.2d at 396) (alterations in original). Furthermore, the showing of apprehension "need not be substantial" when an allegedly infringing mark is in use. *Societe*, 655 F.2d at 944.

Unlike *Neilmed* and other Ninth Circuit cases where reasonable apprehension was found based only on defendants' assertions of the elements of a trademark infringement claim without an overt threat of bringing such claim, here Defendant Moore has made express threats of trademark infringement claims against Plaintiff and its licensee stating he would seek injunctive relief and pursue all legal remedies to protect his marks. From the Plaintiff's perspective, the risk of continuing to use its mark under these circumstances is substantial. In the event that it is eventually determined that Plaintiff's JETT mark infringes upon Defendant's marks, Plaintiff could face years of relinquished profits. *See, Neilmed*, 472 F.Supp.2d at 118. Thus, Plaintiff has clear, reasonable apprehension as demonstrated by the following specific facts and evidence.

---

[2] The Ninth Circuit has recently upheld the Circuit's application of its reasonable apprehension standard, even in light of two more recent Supreme Court decisions, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), and *Clapper v. Amnesty International*, 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). *See San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012 (9th Cir.), *cert. denied*, 144 S. Ct. 190, 217 L. Ed. 2d 77 (2023).

Plaintiff filed its application to register JETT for wine with the USPTO on April 27, 2022. ECF No. 1 at ¶10; No. 10-1. On August 8, 2023, Plaintiff petitioned the USPTO TTAB to cancel Defendant's trademark registrations for JET and JETT, which were cited by the USPTO when refusing Plaintiff's JETT trademark application. ECF No. 1 at ¶15; No. 10-2. The petition for cancellation was based on allegations of non-use and abandonment of Defendant's trademarks and fraud in registration. ECF No. 10-2. During the course of these proceedings, Plaintiff continued to develop its brand and initiated use of the JETT trademark in commerce on wine, the first time being on August 12, 2023, when Plaintiff's JETT wine was offered at the Washington Wine Auction. Elwell Decl. ¶¶3-4, Exh. 1.

The cancellation proceeding between the Parties proceeded in due course following the initiation of the proceeding on August 8, 2023, and Plaintiff continued to develop its JETT wine brand for broad commercial release. Elwell Decl. ¶¶3-14. Then, on July 3, 2024, Plaintiff's trademark licensee, Jackson Family Wines, Inc. ("JFW"), received an email from Defendant. Stambaugh Decl. ¶¶2, 5, Exh. 12. Such email read:

> It has recently been brought to my attention that CARDINALE WINERY and Jackson Family Wines, Inc. has been using the mark "JETT" in association with the marketing and sale of your products and services, including wine. As you should be aware, I am the owner of the trademark "JETT" registration number 4836946 for class 33 with the United States Patent and Trademark Office. **Your company** attempted to register "JETT" serial number 97384930, but was refused registration based upon my registered mark.
>
> Your unauthorized use of my federally registered trademark **amounts to an infringement** of my trademark rights, and therefore, I respectfully request that you **immediately cease and desist in any further use** of "JETT" in association with the marketing, sale, distribution and/or identification of your products and services.
>
> I hope that this issue may be amicably resolved **so that we may avoid any further remedies as provided by state law and the United States Trademark Act.**

ECF No. 1 at ¶¶1-3; Stambaugh Decl. ¶5, Exh. 12 (emphasis added).

On July 9, 2024, Defendant filed a motion to amend his answer in the TTAB cancellation proceeding, attaching the proposed amended answer to the motion. The proposed amended answer stated:

> Neither [Defendant] nor [Defendant's] Predecessor-in-Interest were aware of [Plaintiff's] unauthorized use of the mark JETT until July 2024. Had either [Defendant] or [Defendant's]

Predecessor been aware of the unauthorized use, **either would have filed for injunctive relief with a district court, which is not available in TTAB proceedings**.

ECF No. 1, Exh. 4 at p. 3-4 (emphasis added).

On July 11, 2024, Plaintiff's counsel received an email from Defendant that stated:

Spoke to an attorney who said **before any injunction, etc, can be filed**, I am required to speak to you about a resolution/settlement. Would your client be open to resolution talks? I would most likely offer your client an opportunity to purchase both the JETT and JET marks.

Gerien Decl. ¶3, Exh. 2 (emphasis added).

Counsel for Plaintiff responded, "If you make an offer we will convey it." Gerien Decl. ¶4, Exh. 3. On July 15, 2024, Defendant conveyed a settlement offer to Plaintiff's counsel.[3] Gerien Decl. ¶5, Exh. 4. On July 16, 2024, Plaintiff's counsel responded to the offer stating:

We have reviewed your proposal with our client. Thus far, we have not seen evidence that demonstrates that your registrations are valid. Furthermore, we certainly have not seen any evidence that there is any overlap between your alleged use and JFW's proposed use. Accordingly, we will defer responding to your settlement proposal until we receive your responses to the outstanding discovery requests.

Gerien Decl. ¶7, Exh. 6.

On July 17, 2024, Defendant responded as follows:

Thank you for the reply. **I am rescinding my settlement offer**. We will have our responses to your discovery requests timely served and expect the same from your client. After we receive your client's discovery responses and complete our independent investigation, **we will pursue all available legal remedies to protect my trademarks**.

Gerien Decl. ¶8, Exh. 7 (emphasis added).

On August 5, 2024, following receipt of Defendant's responses to written discovery in the cancellation proceeding, Plaintiff's counsel emailed Defendant with a settlement offer as follows:

We have reviewed your discovery responses and there is nothing in your response and production that causes us to change our assessment that you have no legal right in the marks as there has been no bona fide use in commerce. Attached please find your deposition notice and notice and subpoena for Tami Donald. Since you have contact with Tami Donald, please

---

[3] While Plaintiff recognizes that settlement offers may be protected from disclosure pursuant to Rule 408(a) of the Federal Rules of Evidence, Plaintiff is not offering this evidence for one of the prohibited uses of Rule 408(a), and therefore the exception of Rule 408(b) applies. Further, Defendant has called into question the truthfulness of the Parties' communications as represented by Plaintiff while also noting that Plaintiff did not attach the emails to the Complaint. *See* ECF No. 9 at 10:11-18.

let us know if she would be willing to accept service of the subpoena or whether we should pursue service.  We are also happy to work with you concerning convenient dates for the depositions.

While we believe our claims are meritorious and that we will prevail, there is also a nuisance value in resolving the matter.  Accordingly, our client is willing to make a [REDACTED] payment for you to expressly abandon the registrations and agree not to use the marks going forward.

Let us know about the depositions at your earliest convenience as we will need to schedule these.  Unless we hear back from you by Thursday concerning Tami Donald's willingness to accept service, we will proceed to serve her with the subpoena.

Gerien Decl. ¶9, Exh. 8.

On August 6, 2024, Defendant responded to Plaintiff's August 5, 2024, email. Defendant's response did not address Plaintiff's settlement offer or make any counter proposal and only by addressed scheduling issues for depositions. Gerien Decl. ¶10, Exh. 9.  Plaintiff received no further settlement offer before filing this action, nor has Plaintiff received any "unconditional and irrevocable" covenant not to sue (*see Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013)) from Defendant.  Gerien Decl. ¶12.

As described above, Defendant repeatedly threatened Plaintiff with liability, thereby causing Plaintiff's real and reasonable apprehension of a future lawsuit. *See Inkit, Inc. v. Nintex UK Ltd.*, 2024 WL 3915162, at *4 (C.D. Cal. July 19, 2024) ("Courts within the Ninth Circuit have the reasonable apprehension test satisfied where plaintiffs alleged facts that defendants engaged in actions or communications that explicitly or implicitly threatened liability.").

Even taken alone, Defendant's July 3, 2024, email to Plaintiff's company headquarters demanding that Plaintiff cease and desist from using Plaintiff's JETT Mark to "avoid any further remedies as provided by state law and the United States Trademark Act" would be sufficient to create an actual controversy. *See* ECF No. 1, Exh. 3; Stambaugh Decl. ¶5, Exh. 12. By including the threat of avoiding any further remedies as permitted by law, the email implies the same litigious message as a more explicit threat, which courts have found to create an actual controversy. *See Comcast Cable Commc'ns Corp. v. Finisar Corp.*, 2006 WL 3259000, at *2 (N.D. Cal. Nov. 9, 2006) ("While [defendant] should not be punished for what it did not say in its letters, it also should not be

rewarded for carefully phrased letters that do not include the fatal words regarding patent infringement but imply the same litigious message."); *FN Cellars*, 2015 WL 5138173, at *3 (noting a cease and desist letter "did not need to contain an express threat that defendant would sue, or any other formulaic words, to create an actual controversy"); *see also Neilmed*, 472 F.Supp.2d at 1182 (noting that "[t]he fact that [Defendant] has not yet acted upon its veiled threat does not erase the threat's effect" on Plaintiff).

Furthermore, contrary to Defendant's assertions, the fact that the letter was sent to the licensee of Plaintiff's JETT trademark, rather than the Plaintiff licensor, does not diminish the threat of suit to Plaintiff. *See Minnesota Mining & Manufacturing Co. v. Norton Co.,* 929 F.2d 671 (Fed.Cir.1991) (finding that threats against the plaintiff's customers or licensees will suffice to establish a reasonable apprehension of suit and a case of actual controversy); *Larami Corp. v. Amron*, 1994 WL 369251, at *4 (S.D.N.Y. July 13, 1994) ("Defendants' threats to pursue litigation were preserved, specifically through two letters sent to LCI, licensee of Larami").

Additionally, Defendant's July 9, 2024, and July 11, 2024, threats of filing for injunctive relief (ECF No. 1, Exh. 4 at p. 3-4; Gerien Decl. ¶3, Exh. 2), and Defendant's July 17, 2024, threat of "pursu[ing] all available legal remedies" (Gerien Decl. ¶8, Exh. 7), all lend further support in demonstrating that Plaintiff had a real and reasonable apprehension of suit. *See e.g., Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1158 (9th Cir. 2007) (finding that plaintiff alleged facts supporting "reasonable apprehension" where "[defendant's] lawyer specifically threatened a trademark infringement suit at a meeting; [ ] [defendant's] counsel wrote a letter threatening 'additional proceedings or litigation' [ ] and [ ] [defendant's] counsel told [plaintiff's] counsel that [defendant] would not give up its right to damages"); *Proximo Spirits*, 583 F. App'x at 634 (finding a real and reasonable apprehension of suit when the defendant sent a supplier who made tequila bottles for plaintiff a cease and desist letter alleging that the supplier's bottles were "similar to the point of causing confusion" with the defendant's tequila bottles, and threatening the supplier with "pertinent legal action."); *FN Cellars,* 2015 WL 5138173, at *3 (holding letter threatening only trademark cancellation before PTO, and not direct litigation, gave plaintiff real and reasonable apprehension of suit); *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1077 (N.D. Cal. 2007) ("Plaintiff has a real and

reasonable apprehension [because] [ ] Defendants repeatedly wrote to Plaintiff and her Publisher, purportedly denying Plaintiff permission to use materials that she planned to include in her book and reiterating the clear, if implicit, threats of litigation previously described.").

Thus, Defendant's actions clearly caused Plaintiff's reasonable apprehension of a trademark infringement lawsuit and Plaintiff has demonstrated reasonable apprehension so as to create an actual controversy to support the claims for declaratory judgment.

### c. Actual Controversy Exists Given Plaintiff's Present Use of the Mark and Plaintiff' Reasonable Apprehension Resulting from Defendant's Acts.

The facts clearly demonstrate Plaintiff's use of its JETT mark at the time the complaint was filed, as well as concrete steps towards wide distribution of the JETT product.  Given such use, Defendant's threats of litigation create a clear and reasonable apprehension by Plaintiff that Defendant will, at some point, initiate a trademark infringement lawsuit. Accordingly, there is an actual controversy here which creates subject matter jurisdiction for this Court to hear Plaintiff's declaratory judgment and trademark registration cancellation claims.

### 2. The Court Should Exercise Jurisdiction Over Plaintiff's Declaratory Judgment Claim.

While Defendant has urged the Court to decline jurisdiction pursuant to its discretion under the Declaratory Judgment Act, the factors to be considered by the Court in deciding whether or not to exercise such discretion clearly indicate that the Court should also retain the case pursuant to its discretion.

In *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court identified several factors for the district court to consider when determining whether to exercise jurisdiction over a declaratory judgment action, and the Ninth Circuit has affirmed that "the *Brillhart* factors remain the philosophical touchstone for the district court." *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir.1998). Pursuant to *Brillhart*, "[t]he district court should avoid needless determination of State law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Dizol,* 133 F.3d at 1225. (internal citations omitted).

The Ninth Circuit has also "suggested other considerations" in addition to the *Brillhart* factors that may assist in deciding whether to exercise jurisdiction, including:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a *"res judicata"* advantage; or whether the use of a declaratory action will result in entanglement between the federal and State court systems.
> *Id.*

None of the prudential factors articulated in *Brillhart* and *Dizol* weigh against the Court exercising it discretion to hear Plaintiff's declaratory judgment action. In this case, there is no parallel litigation in state court.[4] Thus, "[t]here is no evidence of duplicative litigation, only this declaratory action and the pending [cancellation] proceeding with the PTO." *Neilmed,* 472 F.Supp.2d at1182. Furthermore, the USPTO "TTAB cancellation action, even if it were counted, has been stayed in favor of this action." *FN Cellars*, 2015 WL 5138173, at *4 (citing *Chesebrough–Pond's,* 666 F.2d at 397 (finding a USPTO action no barrier to an action for infringement)). Thus, in the absence of such duplicative claims in state court, this declaratory judgment action should proceed.

While Defendant's motion includes significant hyperbole concerning forum shopping and assertions that Plaintiff is attempting to increase the expense of the proceedings, "the mere commencement of federal litigation does not constitute forum-shopping or procedural fencing, however expensive litigation might be." *Neilmed,* 472 F.Supp.2d at 1182. It is Defendant that has made multiple threats of trademark litigation, and when Plaintiff attempted to engage in settlement discussions, it was Defendant that terminated such discussions and reiterated his threats of litigation, leaving Plaintiff "under the figurative 'sword of Damocles'…" *Allflex USA, Inc. v. Avid Identification Sys., Inc.,* 2008 WL 9475310, at *4 (C.D. Cal. Feb. 29, 2008). "[F]iling a declaratory action in this district does not amount to forum-shopping, especially when it is the acts of defendant

---

[4]   While Plaintiff has requested that the Court declare non-infringement and fair competition under California state law as well as federal law, these are not independent state law claims, but rather "piggyback" on the federal law claims. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

that created federal court jurisdiction for this case in the first place." *FN Cellars*, 2015 WL 5138173, at *4. Thus, Defendant's empty claims of forum shopping do not warrant the Court declining jurisdiction pursuant to *Brillhart*.

As the Ninth Circuit further articulated in *Dizol*, where the declaratory action will settle all aspects of the controversy, and if the declaratory action will serve a useful purpose in clarifying the legal relations at issue, then the court should exercise jurisdiction. While Defendant has argued to dismiss or stay this action pending the outcome of the TTAB cancellation, the TTAB cancellation involves no claims of likelihood of confusion, only the validity of Defendant's trademark registration. *See* ECF Nos. 11-2 and 11-3. Accordingly, this "declaratory action is preferable to a TTAB action for addressing 'all aspects of the controversy' between the parties, because the TTAB cannot address a trademark non-infringement claim."[5] *FN Cellars*, 2015 WL 5138173, at *4; *see also Rakuten Med., Inc. v. Illumina, Inc.*, 2021 WL 1530999, at *6 (N.D. Cal. Apr. 19, 2021). Therefore, this declaratory judgment action should not be dismissed or stayed as it will resolve all of the issues in dispute, whereas the TTAB cancellation cannot. *See Neilmed*, 472 F.Supp.2d at 1182-83 (in order to resolve the issue of whether Plaintiff's mark infringes on Defendant's, there is no need to wait perhaps years for the TTAB to decide on trademark validity; Defendant can bring an action for infringement regardless of the USPTO's determination). [6]

Thus, in considering the *Brillhart* and *Dizol* factors for exercising jurisdiction over this declaratory judgment action, it is clear that all of those factors favor this court exercising jurisdiction.

///

///

///

---

[5] Defendant himself alluded to this in his proposed amended answer in the TTAB cancellation stating: "Had either [Defendant] or [Defendant's] Predecessor been aware of the unauthorized use, either would have filed for injunctive relief with a district court, which is not available in TTAB proceedings." ECF No. 1, Exh. 4 at p. 3-4.

[6] Defendant's additional claims that Plaintiff proceeded with discovery depositions in the TTAB cancellation and then initiated this action as part of some grand scheme of procedural fencing are simply untrue. Plaintiff offered to suspend discovery in the TTAB cancellation, but Defendant refused, insisting "I do not want to suspend discovery," thereby forcing Plaintiff to proceed with discovery to preserve its rights. *See* Gerien Decl. ¶11, Exh. 10.

**C.  In The Event the Court Grants Defendant's Motion, Plaintiff Should be Allowed Leave to Amend the Complaint.**

The foregoing facts clearly establish that there is subject matter jurisdiction over Plaintiff's declaratory judgment and trademark cancellation claims.  Plaintiff's complaint sufficiently alleges Plaintiff's use of the JETT mark and Plaintiff's reasonable apprehension based on Defendant's conduct.  However, should the Court find that Plaintiff has not sufficiently plead such facts, Plaintiff requests leave to amend the Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Should the Court find that Plaintiff's complaint lacks sufficient specificity to demonstrate an actual controversy, the additional facts included herein could be added in an amendment to the Complaint.  Such amendment would be neither futile nor prejudice Defendant and would allow the case to proceed on the merits, although certainly the Complaint as currently plead demonstrates an actual controversy pursuant Ninth Circuit case law.

///

///

///

///

///

///

///

///

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion to dismiss be denied and that Defendant be directed to Answer the Complaint.


DATED:  November 27, 2024                    DICKENSON, PEATMAN & FOGARTY


By: _____
J. Scott Gerien (SBN 184728)
sgerien@dpf-law.com
Joy L. Durand (SBN 245413)
jdurand@dpf-law.com
Allison N. Berk (SBN 347982)
aberk@dpf-law.com
1500 First Street, Suite 200
Napa, CA 94559
Tel. No.: (707) 261-7000

Attorneys for Plaintiff
Jackson Family Farms LLC